

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| A. B., *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-01254 |
| | § | |
| SALESFORCE.COM, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court is Defendant Salesforce's ("Salesforce") Motion to Dismiss (Doc. No. 23).[1] Plaintiffs A.B., P.P., and A.E. responded (Doc. No. 28) (collectively, "Plaintiffs"). Salesforce replied (Doc. No. 30). After a hearing on the motion, Salesforce filed a supplement to its Motion (Doc. No. 55), and Plaintiffs filed a supplemental response in opposition to the Motion (Doc. No. 56). After careful consideration, this Court **GRANTS** in part and **DENIES** in part Salesforce's Motion.

### I. Background

According to the Third Amended Complaint ("TAC"), Salesforce is a company that promotes business growth through its Customer Relationship Management ("CMR") system, which offers its customers "marketing consultation and implementation, financial processing implementation and support, and bespoke analytics." (Doc. No. 21 at 2, 9). Allegedly, Defendant Backpage, a sex-trafficking website, "sought a partnership [with Salesforce] that would assist in growth objectives as well as concealing their activity," and entered its first contract with Salesforce

---

[1] The Court also has before it Salesforce's Motion to Dismiss (Doc. No. 40), Plaintiff RJ's Response (Doc. No. 44), and Salesforce's Reply thereto (Doc. No. 46). The Court previously consolidated RJ's case into the present litigation. The complaints and briefs are virtually identical. For efficiency and clarity, the Court will refer to the pleadings and briefings of the A.B. litigation, but the ruling applies to both motions to dismiss.

in 2013. (*Id.* at 7, 9). Plaintiffs allege that Salesforce "sold and supported" targeted solutions that were critical to Backpage's growth and success. Backpage used Salesforce technology "to actively obtain and monitor data and additional information related to pimps and sex traffickers that were using Backpage." (*Id.* at 10). Critically, Plaintiffs allege that Salesforce knowingly assisted, supported, and facilitated sex trafficking by enabling Backpage to conduct:

  a. Gathering and managing information from traffickers' and pimps' public social media activity, including but not limited to their likes and dislikes and what they are saying and sharing about Backpage and its competitors;

  b. Developing an infrastructure for a trafficker and pimp database, as well as tracking and collecting trafficker and john data across multiple platforms including phone, email, websites and social media;

  c. Collecting traffickers' and pimps' data across multiple sources and channels and using this information to promote Backpage and the use of its services;

  d. Automatically generating insights into traffickers' and pimps' purchasing habits to help Backpage understand the traffickers better and predicting how they will feel and act so Backpage could prepare the most effective outreach;

  e. Collecting information of sex traffickers and victims to target through direct e-mail campaigns to advertise and promote illegal prostitution;

  f. Analyzing information and behavior of pimps and victims to target through direct e-mail campaigns to advertise and promote illegal prostitution;

  g. Utilization of cloud storage to store (and secure) operational database and information;

  h. Implementing a significant payment processing interface capability allowing Backpage to connect with credit card companies and integrating payment information with information about pimps and traffickers;

  i. Improving the solicitation of sales opportunities to traffickers and pimps for Backpage;

  j. Improving and implementing the solicitation of referrals from existing traffickers and pimps using Backpage by creating cross-selling and upselling opportunities;

  k. Duplication of operating system to evade law enforcement in or around 2015; and

  l. System modification to enable operation from three continents.

(*Id.* at 13–14).[2]

Prior to contracting with Salesforce in 2013, Backpage allegedly lacked the resources to scale its online marketing into an international sex-trafficking hub. (*Id.* at 9). Plaintiffs allege that at the time of this initial contract, Backpage's illegal activity was widely known, reported in the news, and "any reasonably prudent examination of Backpage's business operations or a simple google search would have indicated Backpage was not a general online marketplace but was actually the predominant force in online sex trafficking." (*Id.*). Nevertheless, Backpage remained a Salesforce customer and in 2015, it "sold a duplicate copy to Backpage," despite the fact that Backpage was under "intense law enforcement scrutiny." (*Id.*). The Salesforce-Backpage relationship allegedly survived several lawsuits, investigations, and even the arrest of Backpage's CEO for "conspiracy to commit pimping" by Attorney General Kamala Harris. (*Id.*)

A.B. was trafficked through advertisements placed on Backpage's website under the "Houston" geographic area in 2014. A.B. allegedly suffered significant physical and emotional injuries as a result of being trafficked. (*Id.* at 12). A.B. filed this suit against Salesforce and Backpage alleging the following causes of action: (1) Sex Trafficking Pursuant to the Trafficking Victims Protection Act ("TVPA"); (2) Violation of the Texas Civil Practices and Remedies Code Chapter 98; (3) Negligence; (4) Gross Negligence; and (5) Civil Conspiracy. (*Id.* at 13–19). Salesforce filed a Motion to Dismiss (Doc. No. 23), Plaintiff responded (Doc. No. 28), and Salesforce replied (Doc. No. 30). After a hearing on the Motion, Salesforce filed a supplemental brief in support of its Motion (Doc. No. 55), to which Plaintiff responded. (Doc. No. 56).

---

[2] Salesforce denies these allegations, especially that it had any knowledge that Backpage was planning to incorporate the use of its operational support into a sex-trafficking venture. (Doc. No. 23 at 10, 23). At the motion to dismiss stage, however, the Court must accept as true all allegations in the complaint (TAC). *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

## II. Legal Standard

A party may file a motion to dismiss claims against it for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier*, 509 F.3d at 675. The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

## III. Analysis

### A. Sex Trafficking Pursuant to the TVPA, 18 U.S.C. § 1595

Plaintiffs allege that, as victims within the meaning of 18 U.S.C. § 1595, they are entitled to a civil remedy because Salesforce benefitted from and knowingly assisted in sex trafficking. (Doc. No. 21 at 13). Section 1595, in relevant part, states:

> (a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew

4

or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595. Salesforce's primary argument is that Section 230 of the Communications Decency Act ("CDA 230") bars Plaintiffs' claims, because Salesforce falls within the protections of the statute.[3] (Doc. No. 23 at 14). Secondarily, it argues that Plaintiffs have failed to allege facts establishing that Salesforce violated the federal criminal sex-trafficking provisions of 18 US.C. § 1591, which it argues is a prerequisite for liability under 18 U.S.C. § 1595. (*Id.* at 22). It further argues that Plaintiffs failed to allege the scienter required of Section 1595—that Salesforce "knowingly" benefitted from its own participation in the sex-trafficking venture. (*Id.* at 25).

Plaintiffs respond that CDA 230 does not shield Salesforce in this instance, and that they have adequately pleaded a claim for beneficiary liability under the TVPA. (Doc. No. 28 at 10, 17).

---

[3] CDA 230 states in relevant part:

(c) Protections for "Good Samaritan" blocking and screening of offensive material

    (1) Treatment of publisher or speaker. No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

(e) Effect on other laws.
    (1) No effect on criminal law . . .
        \*\*\*
    (5) No effect on sex trafficking law. Nothing in this section . . . shall be construed to impair or limit—
        (A) any claim in a civil action brought under section 1595 of title 18, United States Code, if the conduct underlying the claim constitutes a violation of section 1591 of Title 18 . . .

(f) Definitions
        \*\*\*
    (2) Interactive computer service
        The term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.

47 U.S.C. § 230

Plaintiffs trace each element of a claim under Section 1595 to demonstrate that they adequately alleged each element, and dispute Salesforce's argument that Plaintiffs must show that Salesforce itself committed a violation of Section 1595 in order to be held liable under Section 1595.

The Court concludes that Plaintiffs have adequately alleged that Salesforce could be held liable for its alleged actions under Section 1595. First, the Court finds that Plaintiffs' TAC is sufficient to plead a claim for sex trafficking under the TVPA. Despite Salesforce's argument that Plaintiff did not plead the requisite scienter, Plaintiff has alleged that Salesforce "was in a position to learn, and in fact did learn, about illegal business practices of Backpage once the venture was formed [and] armed with this knowledge, Salesforce chose to financially benefit by doing business with Backpage." (Doc. No. 21 at 10). The Court, bound to take all factual allegations as true when considering a motion to dismiss, finds these allegations sufficient to survive a 12(b)(6) attack on the federal sex-trafficking claim. *Sonnier*, 509 F.3d at 675.

Second, at this stage, the Court cannot hold as a matter of law that CDA 230's protections apply to Salesforce. In particular, the Court is not persuaded that Salesforce is a provider of "an interactive computer service" entitled to protection. Moreover, it is unclear to the Court whether CDA 230 is even relevant, because Plaintiff has alleged that Salesforce directly and "knowingly benefitted" from providing services to facilitate sex trafficking. That allegation, if true, would elevate Salesforce's role beyond that of a mere publisher, which is the touchstone of CDA 230(c)(1). [4]

---

[4] Defendants assert that CDA 230 bars *all* of Plaintiffs' claims. The Court's reasoning expressed in response to the federal sex-trafficking claim applies equally to the rest of the claims: The Court cannot, as a matter of law, find at this stage of the litigation that CDA 230 bars Plaintiffs' claims. Consequently, the Court will address only the non-CDA 230 arguments raised by Salesforce for each ensuing claim.

B. <u>Violation of the Texas Civil Practices and Remedies Code Chapter 98</u>

Chapter 98 of the Texas Civil Practices and Remedies Code states in relevant part:

> (a) A defendant who engages in the trafficking of persons or who intentionally or knowingly benefits from participating in a venture that traffics another person is liable to the person trafficked, as provided by this chapter, for damages arising from the trafficking of that person by the defendant or venture.

Tex. Civ. Prac. & Rem. Code Ann. § 98.002. Salesforce argues that Plaintiffs have not alleged a violation of the Texas Anti-Trafficking Statute for similar reasons it argued the Section 1595 allegations are lacking: Plaintiffs did not allege that Salesforce intentionally or knowingly participated in, or knowingly benefitted from, any venture that trafficked Plaintiffs. (Doc. No. 23 at 26–27). For the very same reasons stated above, the Court, accepting all factual allegations as true, as it must, finds that Plaintiffs have stated a claim under the Texas Civil Practices and Remedies Code Chapter 98 sufficient to avoid a Motion to Dismiss.

C. <u>Negligence and Gross Negligence</u>

Plaintiffs allege that Salesforce has a duty "to the general public . . . to take reasonable steps to protect them from the foreseeable dangers of its products as related to human trafficking," and an ongoing duty, after providing its tools to support Backpage, "to ensure that those tools were being used for good." (Doc. No. 21 at 14–15). Salesforce argues that Plaintiffs' negligence and gross negligence claims fail as a matter of law because Plaintiff has not alleged facts giving rise to a legal duty or facts to show proximate cause. Plaintiffs respond that Salesforce in fact had a duty "not to provide its own products and services to facilitate and expand a sex trafficking operation," and a duty not to assist Backpage in performing criminal acts. (Doc. No. 28 at 26). They also argue that Salesforce's conduct was a cause in fact of Plaintiffs' harm because Salesforce provided the "essential" technology to ensure Backpage's growth, and that injuries to Plaintiffs were reasonably

foreseeable because Salesforce "knew or learned" that Backpage was engaged in trafficking and nevertheless chose to provide it with support. (*Id.* at 29).

The Court finds that Plaintiffs have failed to allege facts that give rise to a legal duty. In Texas, a business has no duty to monitor what its customers do with its products post-sale or to prevent them from engaging in criminal acts. *See Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 89 (Tex. App.—El Paso 2012, no pet.); *see also Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 179 (5th Cir. 2018). In *Gann*, the court held that the seller of a "longneck" glass beer bottle was not liable under a theory of negligence when a purchaser of the "longneck" at a bar wielded it as a weapon against plaintiff, a third party. *Gann*, 394 S.W.3d at 85. The court found that defendants owed the plaintiff no legal duty to protect her from the criminal acts of a third person, i.e., the longneck-wielding patron. *Id.* at 89. Here, as in *Gann*, Plaintiffs are clearly seeking to hold Salesforce liable for alleged criminal acts of third parties (Backpage, the pimps, and the "johns"). But as *Gann* illustrates, the seller has no duty to protect against a purchaser's use of the product to injure a third party. *Id.* Plainly, in Texas, "a defendant has no duty to prevent the criminal acts of a third party who does not act under the defendant's supervision or control." *LaFleur v. Astrodome-Astrohall Stadium Corp.*, 751 S.W.2d 563, 564 (Tex. App.—Houston [1st Dist.] 1998, no writ).

Moreover, Plaintiffs' attempt to hold Salesforce liable for assisting a third party (Backpage) who, in turn, allegedly committed a criminal act, is also unavailing. It is far from clear that there is civil aiding and abetting liability in Texas for the harmful conduct of a third party. *AmWins Specialty Auto, Inc. v. Cabral*, 582 S.W.3d 602, 611 (Tex. App.—Eastland 2019, no pet.). Plaintiffs here have not explicitly used the term "aiding and abetting," but have nonetheless tried to fashion a similar legal duty. In *Cabral*, after a review of Texas law, the court refused to recognize a separate cause of action for aiding and abetting apart from civil conspiracy. *Id.* at 610–611. The

court found that the *owner* of a car that was used in a hit-and-run could not be held not liable under a theory of aiding and abetting for "knowingly participating in a breach of duty owed by the third party [the driver] to the Plaintiff's insured." *Id.* at 605–06. In so holding, the court confirmed that Texas law does not confer liability, outside of a claim for civil conspiracy, on a person for the harmful conduct of another when the person "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." *Id.* at 610. Here, setting aside civil conspiracy, Plaintiffs' attempt to hold Salesforce liable for allegedly assisting Backpage, which then committed criminal acts, flies in the face of *Cabral*. Just as the car-owner in *Cabral* had no "duty" not to knowingly participate in a breach of duty owed by a third party, Salesforce has no duty not assist Backpage, which allegedly went on to commit a criminal act utilizing its products or services. Therefore, Plaintiffs have failed to establish a duty owed by Salesforce.

Even if Plaintiffs had alleged facts to support a legal duty, the Court also finds that they failed to allege facts to demonstrate proximate cause. Under Texas law, proximate cause requires foreseeability and cause in fact. *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013) (per curium). Cause in fact requires that the act or omission be "a substantial factor in bringing about the harm, and absent the act or omission—i.e., but for the act or omission—the harm would not have occurred." *Id.* at 113. Plaintiffs admit that sex trafficking on Backpage's website was already occurring before—and independent of—its use of Salesforce's products. (Doc. No. 21 at 7). Moreover, the TAC does not allege that Salesforce played a role in the trafficking itself, or in designing or sanitizing the ads on Backpage, which were the key factors that the Plaintiffs have argued caused the actual injury. (*Id.* at 12). Plaintiffs allege that the trafficking was made possible by advertisements for sexual services on Backpage "facilitated by the tools . . . provided by

9

Salesforce." (*Id.*). Mere "facilitation" does not satisfy the standard of "substantial factor." The TAC does not adequately bridge the causal gap between Salesforce selling marketing tools to Backpage, and a third-party posting an ad on Backpage to commit sex trafficking. Plaintiffs have not alleged facts demonstrating how Salesforce's marketing advice and/or products were essential to the ads that trafficked Plaintiffs.[5]

The Court's conclusion that Plaintiffs have failed to allege duty and proximate cause to establish the elements of negligence eliminates common law negligence as a cause of action and, by extension, also eliminates Plaintiffs' claim of gross negligence.

D. Civil Conspiracy

Finally, Plaintiffs have filed a cause of action for civil conspiracy, alleging that Salesforce and Backpage are:

> (1) a combination of two or more persons; (2) Salesforce and Backpage sought to expand Backpage's operations; (3) Salesforce and Backpage reached a meeting of the minds on the course of action by entering into a contractual relationship; (4) at a minimum, using the tools, expertise and support of Salesforce, Backpage committed one or more unlawful, overt acts… and (5) damages occurred as a proximate result of this conspiracy.

(Doc. No. 21 at 19). Salesforce argues that Plaintiffs have failed to adequately allege a meeting of the minds between Salesforce and Backpage to commit unlawful acts, because Plaintiffs have not alleged an agreement with specific intent to accomplish illegal acts. (Doc. No. 23 at 32). Plaintiffs did not respond to Salesforce's arguments that this civil conspiracy claim was deficient.

The Court agrees with Salesforce. Civil conspiracy requires: "(1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons

---

[5] Moreover, under Plaintiffs' theory of causation as pleaded, any vendor of common business services, like phone providers, payroll companies, or computer-manufactures, could be a causative agent, since Backpage could have used those services in some facet of its course of conducting illegal activity. (Doc. No. 23 at 31).

10

reach a meeting of the minds *on the object or course of action*; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017) (emphasis added). The Court finds that allegations of an agreement for the purchase of business software are insufficient to establish a "*specific intent* to agree to accomplish something unlawful or to accomplish something lawful by unlawful means." *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 881 (Tex. 2010) (emphasis added); *see also Parker*, 514 S.W.3d at 222 (noting civil conspiracy exists only as to parties "aware of the intended harm . . . at the outset of the combination or agreement."). Plaintiffs have not adequately alleged that in entering the contract, Salesforce had sex trafficking as an "object to be accomplished." (Doc. No. 23 at 32). Moreover, Plaintiffs' failure to argue whatsoever in response to Salesforce's motion to dismiss the civil conspiracy claim constitutes a waiver of such an argument. *Fredricksen v. Halliburton Co.*, 2011 WL 1232991, at * 1 n.6 (S.D. Tex. Mar. 31, 2011). Thus, the Court concludes that Plaintiffs have failed to state a claim for civil conspiracy.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the motions to dismiss (Doc. Nos. 23 & 40) in part and dismisses the claims of negligence, gross negligence, and civil conspiracy and **DENIES** the motions in part as to the causes of actions based upon the federal and state sex-trafficking statutes.

Signed at Houston, Texas, this 22nd day of March 2021.

Andrew S. Hanen
United States District Judge

11