# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| A.B., an individual, | § § § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-01254 |
| SALESFORCE.COM, INC., *et al.* | § § § § | |
| P.P., an individual, | § § § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-01256 |
| SALESFORCE.COM, INC., *et al.* | § § § § | |
| A.E., an individual, | § § § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-01516 |
| SALESFORCE.COM, INC., *et al.* | § § § § | |
| R.J., an individual, | § § § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-01254 |
| SALESFORCE.COM, INC., *et al.* | § § § § | |

**SALESFORCE.COM, INC.'S OPPOSED MOTION FOR CERTIFICATION
UNDER 28 U.S.C. § 1292(b) AND BRIEF IN SUPPORT**

Salesforce respectfully moves for certification of the Court's Order entered March 23, 2021, for interlocutory appeal under 28 U.S.C. § 1292(b). Certification is warranted because the Order presents controlling questions of law as to which there

is substantial ground for difference of opinion—including whether section 230 of the Communications Decency Act bars this suit and whether plaintiffs' allegations are sufficient to state a claim under 18 U.S.C. § 1595(a).  An immediate appeal of the Order would materially advance the ultimate termination of this litigation.

# TABLE OF CONTENTS

**Page**

Introduction ......................................................................................................... 1

Nature and State of the Proceedings ............................................................... 1

Relevant Background ........................................................................................ 2

Statement of the Issues ................................................................................... 5

Summary of Argument ..................................................................................... 6

Argument ........................................................................................................... 7

    I.    The Court's Order presents at least two controlling questions of law. ........................................................................................................ 7

        A.    Section 230 .................................................................................. 7

        B.    Section 1595(a) ......................................................................... 8

    II.    There is substantial ground for disagreement concerning the Court's Order ............................................................................................ 9

        A.    Section 230 ................................................................................ 10

        B.    Section 1595(a) ....................................................................... 14

    III.    An immediate appeal will materially advance the ultimate termination of this litigation. .......................................................... 16

        A.    Section 230 ................................................................................ 16

        B.    Section 1595(a) ....................................................................... 17

Conclusion ....................................................................................................... 17

Certificate of Conference ............................................................................... 20

Certificate of Service ...................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*A.B. v. Wyndham Hotels & Resorts, Inc.*,
  No. 3:19-cv-01992-IM, 2021 WL 1235241 (D. Ore. Mar. 31, 2021) ..................... 14

*ACS Primary Care Physicians Sw., P.A. v. UnitedHealthcare Ins.*,
  No. 4:20-CV-01282, 2021 WL 235177 (S.D. Tex. Jan. 22, 2021) ......................... 15

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
  No. 20-cv-00656-BLF, 2020 WL 4368214 (N.D. Cal. July 30, 2020) ................... 14

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ............................................................................... 13

*Castellanos-Contreras v. Decatur Hotels, LLC*,
  622 F.3d 393 (5th Cir. 2010) .................................................................................. 9

*Coates v. Brazoria Cty. Tex.*,
  919 F. Supp. 2d 863 (S.D. Tex. 2013)............................................................ 15, 16

*Davis v. Motiva Enterprises, L.L.C.*,
  No. 09-14-00434-CV, 2015 WL 1535694
  (Tex. App.—Beaumont Apr. 2, 2015)................................................................... 12

*Dehoyos v. Allstate Corp.*,
  345 F.3d 290 (5th Cir. 2003) ................................................................................... 8

*Diez v. Google, Inc.*,
  831 F. App'x 723 (5th Cir. 2020) .............................................................. 7, 13, 18

*Doe 3 v. Red Roof Inns, Inc.*, No. 1:19-cv-03843-WMR,
  2020 WL 1872333 (N.D. Ga. Apr. 13, 2020) ....................................................... 15

*Doe v. Kik Interactive, Inc.*,
  482 F. Supp. 3d 1242 (S.D. Fla. 2020) ................................................................. 15

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) ....................................................................... 4, 7, 13

*Does #1 through #90 v. Salesforce.com, Inc.*,
  No. CGC-19-574770, slip op. (S.F. Super. Oct. 3, 2019)................................ 11, 12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*E.S. v. Best W. Int'l, Inc.*,
   No. 3:20-cv-00050-M, 2021 WL 37457 (N.D. Tex. Jan. 4, 2021) ........................... 14

*Earl v. Boeing Co.*,
   No. 4:19-cv-507, 2021 WL 1080689 (E.D. Tex. Mar. 18, 2021) .............................. 9

*Esparza Rico v. Flores*,
   405 F. Supp. 2d 746 (S.D. Tex. 2005) ................................................................... 17

*GoDaddy.com, LLC v. Toups*,
   429 S.W.3d 752 (Tex. App.—Beaumont 2014) .................................................... 13

*Gonzalez v. CoreCivic, Inc.*,
   986 F.3d 536 (5th Cir. 2021) ................................................................................... 8

*In re Ichinose*,
   946 F.2d 1169 (5th Cir. 1991) ............................................................................... 16

*Jane Doe #9 v. Wyndham Hotels & Resorts, Inc.*,
   No. 4:19-CV-5016, 2021 WL 1186333 (S.D. Tex. Mar. 30, 2021) ......................... 14

*In Re: Jane Doe Cases, Tex. MDL Cause*,
   No. 2020-28545, slip op. (Aug. 28, 2020) ............................................................. 12

*Jane Doe No. 1 v. Backpage.com, LLC*,
   817 F.3d 12 (1st Cir. 2016) .................................................................................... 13

*La. State Conf. of NAACP v. Louisiana*,
   --- F. Supp. 3d. ---, No. 19-479-JWD-SDJ, 2020 WL 6130747
   (M.D. La. Oct. 19, 2020) ......................................................................................... 8

*McSurely v. McClellan*,
   697 F.2d 309 (D.C. Cir. 1982) ................................................................................ 8

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) ................................................................................... 8

*O'Kroley v. Fastcase, Inc.*,
   831 F.3d 352 (6th Cir. 2016) ................................................................................. 13

*Rico v. Flores*,
   481 F.3d 234 (5th Cir. 2007) ................................................................................... 6

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Ryan v. Flowserve Corp.*,
    444 F. Supp. 2d 718 (N.D. Tex. 2006) ................................................................ 7, 16

*S.J. v. Choice Hotels Int'l, Inc.*,
    473 F. Supp. 3d 147 (E.D.N.Y. 2020) ...................................................................... 15

*Tesco Corp. v. Weatherford Int'l, Inc.*,
    722 F. Supp. 2d 755 (S.D. Tex. 2010) ......................................................................... 7

*United States v. Afyare*,
    632 F. App'x 272 (6th Cir. 2016) ............................................................................ 15

*Zango, Inc. v. Kaspersky Lab, Inc.*,
    568 F.3d 1169 (9th Cir. 2009) ................................................................................ 12

**Statutes**

18 U.S.C. § 1591 ............................................................................................... 9, 15, 17

18 U.S.C. § 1595 ................................................................................................... 1, 4, 18

28 U.S.C. § 1292 ............................................................................................... 1, 2, 6, 17

47 U.S.C. § 230 .................................................................... 4, 11, 12, 13, 14, 16, 17

**Other Authorities**

16 Wright & Miller, Fed. Prac. & Proc. Jurisdiction § 3930 ......................................... 9

*Bring your CRM to the future*, Salesforce,
    https://www.salesforce.com/crm/#whatiscrm
    (last visited Apr. 15, 2021) ..................................................................................... 2, 3

**INTRODUCTION**

The Court's Order checks every box for interlocutory review.  It not only satisfies all of the traditional criteria under 28 U.S.C. § 1292(b) but also involves immunity from *suit*—not just ultimate liability—which, once lost, is irretrievably gone.  Both sides would benefit from resolving sooner rather than later the threshold, potentially dispositive issue whether section 230 of the Communications Decency Act applies to Salesforce and bars this lawsuit in its entirety.

Even setting immunity aside, this case involves a statutory-construction issue of first impression in the Fifth Circuit, one that two other district courts in the Fifth Circuit have decided differently from this Court—whether, where a defendant has formed a business relationship with an entity, conclusory allegations that the defendant knew or should have known about the entity's alleged involvement in sex trafficking are sufficient to state a claim under 18 U.S.C. § 1595(a).

Resolving that question now would winnow the issues before this Court, focus discovery, increase judicial efficiency, and clarify a recurring, unsettled issue of law. Interlocutory review is warranted for these reasons, as well.

**NATURE AND STATE OF THE PROCEEDINGS**

Four plaintiffs sued Salesforce, alleging virtually identical facts and claims related to their sex trafficking by criminals through the Backpage.com website. Salesforce moved to dismiss.  This Court entered an Order granting that motion in part but denying it as to plaintiffs' federal and state statutory sex-trafficking claims.

Salesforce respectfully moves for the Court to certify that Order for interlocutory appeal under 28 U.S.C. § 1292(b).

## RELEVANT BACKGROUND

CRM is an acronym that stands for customer relationship management—basically, any practice, technology, or strategy designed to help businesses improve their customer relationships. *Bring your CRM to the future*, Salesforce, https://www.salesforce.com/crm/#whatiscrm (last visited Apr. 15, 2021).[1]   In today's marketplace, CRM usually refers to tools—typically a web application or computer software—that allow organizations to focus on individual customers, e.g., buyers, suppliers, service users, or anyone else the organization does business with. *Id.*

As technology has evolved, so has CRM.  Although it started with handwritten notes and rolodexes, with the advent and proliferation of digital technology, it evolved into databases stored on individual computers—sometimes called "digital rolodexes"—and then into something even more complex.  *Bring your CRM to the future*.  Today, businesses rely on digital platforms that connect different departments—from marketing to sales to customer service—and organize their notes, activities, and metrics into one cohesive system.  *See id.*

In this way, every user in the business who has access to the internet can also have easy, direct access to real-time customer data—thereby ensuring better

---

[1]   Salesforce's website is cited in the operative complaint.  *See* Third Am. Compl. ¶ 59 n.5, ECF No. 21.  In this motion, Salesforce cites other pages on its website solely for background purposes.

coordination across the business's departments with the ultimate goal of improving the customer's experience with the business. *Bring your CRM to the future*.

Salesforce is the preeminent leader in online CRM software. Third Am. Compl. (TAC) ¶¶ 8, 10, ECF No. 21; *see* Order 1, ECF No. 58. Salesforce sells software that is housed in the "cloud," a network of computer servers connected to the internet that is used to store and process data. *See* Order 2; TAC ¶¶ 10, 94. When a business subscribes to Salesforce's online software, Salesforce gives it access to the internet servers where Salesforce's cloud-based tools reside. *See* Order 2; TAC ¶¶ 10, 80.

Through those servers, the business can access, via the internet, Salesforce's software and use its various tools to analyze and organize data about its customers. Order 2; TAC ¶ 10. The software can also help the business use its customer data for marketing, and the business may contact Salesforce for customer support in using the software. Order 2; *see* TAC ¶¶ 10–12, 75–78, 89.

One of the tens of thousands of companies to subscribe to Salesforce's online software was an affiliate of Backpage. After criminals posted unlawful sex-trafficking ads on Backpage's website, plaintiffs tragically were trafficked through those ads. Order 3; TAC ¶¶ 86–87. They sued Backpage for allowing the traffickers to post the ads, directly accepting money for those ads, and "sanitiz[ing]" the ads to mask their illegality. TAC ¶ 113.

Plaintiffs also sued Salesforce. Plaintiffs do not allege that Salesforce had anything to do with acts of sex trafficking or plaintiffs themselves. Nor do they allege that Salesforce had anything to do with posting the sex-trafficking ads on Backpage's

website or with Backpage's "sanit[ation]" practices.  TAC ¶ 113.  In fact, plaintiffs note that Salesforce has sought to "us[e] its talent and expertise to help *fight* human trafficking."  *Id.* ¶ 61 (emphasis added).

Plaintiffs claim, however, that Salesforce should be held liable because "Salesforce's technology was used by Backpage" to compile customer data for marketing, Salesforce allegedly knew or should have known that authorities were investigating Backpage for facilitating sex trafficking, and plaintiffs allegedly were trafficked through ads posted on the Backpage website.  TAC ¶ 54–55, 66, 69, 74; *see* Order 2–3.

Salesforce moved to dismiss for two reasons relevant here.

*First*, because Salesforce provides cloud-based software tools that are accessed through the internet, it is a "provider . . . of an interactive computer service."  47 U.S.C. § 230(c)(1).  It is thus immune from suit "in *all* cases"—including this one— "arising from the publication of user-generated content."  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (emphasis added); *see* Mot. Def. to Dismiss Pls.' Operative Compls. (MTD) 7–12, ECF No. 23; Order 5.

*Second*, even setting aside section 230, the federal civil sex-trafficking law, 18 U.S.C. § 1595(a), imposes liability only if a defendant "knowingly benefit[ted] . . . from participation in a venture" that it "knew or should have known has engaged in *an* act" of sex trafficking (emphasis added)—phrasing that requires more than the conclusory allegations here that Salesforce had a business relationship with

Backpage and knew or should have known that Backpage was allegedly involved in sex trafficking, *see* MTD 14–19; *see* Order 5.

This Court dismissed the majority of plaintiffs' claims but denied Salesforce's motion as to plaintiffs' section 1595(a) and Chapter 98 federal and state sex-trafficking claims. The Court ruled that it could not "hold as a matter of law that [section] 230's protections apply to Salesforce"—at least not "at this stage." Order 6. The Court reasoned that Salesforce either (i) is not "an interactive computer service" "provider," or (ii) went beyond the role of a "publisher" by "knowingly benefitt[ing] from providing services to facilitate sex trafficking." *Id.* (quotation marks omitted).

The Court further held that plaintiffs stated a claim under section 1595(a), citing plaintiffs' allegation that Salesforce "was in a position to learn, and in fact did learn, about illegal business practices of Backpage" yet still sold a software subscription to Backpage's affiliate. *Id.*

## STATEMENT OF THE ISSUES

(1)   Should the Court certify its Order for interlocutory appeal under section 1292(b) because the issue whether section 230 bars plaintiffs' claims (i) involves a controlling question of law, (ii) there is substantial ground for difference of opinion on that question, and (iii) its resolution on immediate appeal may materially advance the ultimate termination of this litigation?

(2)   Should this Court certify its Order for interlocutory appeal under section 1292(b) because the issue whether plaintiffs stated a claim for civil damages under section 1595 (i) involves a controlling question of law, (ii) there is substantial ground for difference of opinion on that question, and (iii) its resolution on immediate appeal may materially advance the ultimate termination of this litigation?

## SUMMARY OF ARGUMENT

A district court may certify a non-final order for interlocutory appeal if it is "of the opinion that [1] such order involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007).  Certification is warranted here because the Court's Order presents two issues that satisfy all three criteria—(i) whether section 230 immunizes Salesforce from this suit, and (ii) whether the text of section 1595(a) requires more than conclusory allegations of a business relationship between the defendant and an entity that the defendant allegedly knew or should have known was involved in sex trafficking.

Both questions independently warrant interlocutory review over and above satisfying the statutory criteria.  The first question involves a threshold issue of immunity that should be resolved as early in the litigation as possible, because just as an egg can't be unscrambled, a case can't be unlitigated—and an appeal in the normal course will come far too late for meaningful appellate review.  The second question presents an unsettled, novel question of law that has divided district courts in Texas and across the Nation, but that no Court of Appeals—including the Fifth Circuit—has directly addressed.  These are precisely the circumstances in which an interlocutory appeal is warranted.

## ARGUMENT

## I.   The Court's Order presents at least two controlling questions of law.

The first criterion for certification under section 1292(b) is that the order "involves a controlling question of law." An order indisputably presents such a question "if reversal of the district court's opinion would result in dismissal of the action." *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006) (citation omitted). But "the resolution of an issue need not necessarily terminate an action in order to be controlling." *Tesco Corp. v. Weatherford Int'l, Inc.*, 722 F. Supp. 2d 755, 766 (S.D. Tex. 2010) (citation omitted). Instead, "[w]hether an issue of law is controlling generally hinges upon its potential to have some impact on the course of the litigation." *Id.*

The Order here involves two controlling questions of law that could either terminate or significantly impact this litigation. Whether section 230(c)(1) applies to Salesforce is—in the Fifth Circuit and every other—a threshold question that governs the trajectory of the case. And whether plaintiffs have sufficiently alleged a cause of action under section 1595(a) determines the future of that claim.

### A.   Section 230

The section 230 issue presents a controlling question of law—particularly given that the Fifth Circuit considers section 230(c)(1) an "immunity provision[]" and regards its applicability as a threshold legal issue to resolve at the outset of litigation. *MySpace*, 528 F.3d at 418; *accord Diez v. Google, Inc.*, 831 F. App'x 723, 724 (5th Cir. 2020) (per curiam). That necessity is driven "not because of the expense of litigation,

but because of the irretrievable loss of immunity from suit." *McSurely v. McClellan*, 697 F.2d 309, 317 n.13 (D.C. Cir. 1982) (per curiam).  So courts "aim to resolve the question of [section] 230 immunity at the earliest possible stage of the case because that immunity protects [providers] not only from ultimate liability," but also from litigation itself.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citation omitted).

As a result, an interlocutory appeal is warranted to ensure meaningful appellate review of whether section 230 bars plaintiffs' suit against Salesforce.  If the litigation continues, even though Salesforce may eventually be protected "from ultimate liability," it will have lost—irretrievably—section 230's protection against being sued in the first place and "having to fight costly and protracted legal battles." *Nemet Chevrolet*, 591 F.3d at 255 (citation omitted).  Thus, as "resolution on appeal . . . would impact the course of litigation and could terminate the suit in this Court," *La. State Conf. of NAACP v. Louisiana*, --- F. Supp. 3d. ---, No. 19-479-JWD-SDJ, 2020 WL 6130747, at *9 (M.D. La. Oct. 19, 2020), the section 230 issue is a controlling question of law that warrants immediate review.

**B.   Section 1595(a)**

The section 1595(a) issue independently presents a controlling question of law. Orders denying motions to dismiss for failure to state a facially valid claim satisfy the controlling-question criterion.  *See, e.g.*, *Gonzalez v. CoreCivic, Inc.*, 986 F.3d 536, 537–38 (5th Cir. 2021) (accepting interlocutory appeal of order denying motion to dismiss that implicated a controlling question of statutory interpretation); *Dehoyos*

8

*v. Allstate Corp.*, 345 F.3d 290, 294 (5th Cir. 2003) (same where order denying motion to dismiss involved a controlling question of preemption).  In short, "[t]here is no doubt that a question is 'controlling' if" reversal on appeal "would require . . . a dismissal." 16 Wright & Miller, Fed. Prac. & Proc. Jurisdiction § 3930.

That is precisely the situation here.  The Court's determination that plaintiffs sufficiently alleged a claim under section 1595(a) allows that claim to proceed.  But if the Fifth Circuit construes section 1595(a) differently—and holds that the text demands more than conclusory allegations of a generic business relationship with negligence as to or knowledge of another's alleged misdeeds—then the claim would fail.  The construction of section 1595(a) thus presents another controlling question of law.[2]

## II.   There is substantial ground for disagreement concerning the Court's Order.

Section 1292(b) next requires "substantial ground for difference of opinion" as to the controlling questions of law.  This requirement is satisfied wherever reasonable jurists could debate the proper resolution of a controlling legal issue.  *See, e.g.*, *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir. 2010) (en banc).  It is also satisfied where courts have disagreed on the precise issues presented, and where the order involves "difficult questions of first impression."  *Earl v. Boeing*

---

[2]   Because this Court held that section 230(c)(1) did not apply, the Court had no need to consider section 230(e)'s exemption for section 1595 claims where the underlying conduct also violates section 1591.  If the Fifth Circuit were to hold that the section 1595 claim here fails, that would necessarily resolve the section 230(e) issue, as well.

*Co.*, No. 4:19-cv-507, 2021 WL 1080689, at *5 (E.D. Tex. Mar. 18, 2021) (citation omitted).  And "[i]f proceedings that threaten to endure for several years depend on an initial question of jurisdiction, limitations, or the like, certification may be justified at a relatively low threshold of doubt."  16 Wright & Miller, Fed. Prac. & Proc. Jurisdiction § 3930.

Courts in Texas, the Fifth Circuit, and beyond have reached conclusions that differ from this Court's on both the section 230 and section 1595(a) issues.  Moreover, the proper construction of section 1595(a) is an issue of first impression in the Fifth Circuit.  And because the future of this litigation hinges on these issues, the substantial-ground requirement is more than satisfied.

### A.    Section 230

The Court's initial hesitation as to whether Salesforce is an interactive computer service provider covered by section 230 is contrary to at least two other courts that have decided that issue as to Salesforce specifically.  And decisions from courts across the country magnify the substantial ground for disagreement on when an interactive computer service provider is "treated" as a "publisher" under section 230.

To start, two other courts have very recently held that Salesforce meets section 230's definition of an interactive computer service provider in cases involving virtually identical allegations.  A California state court determined that "[t]he term 'interactive computer service' . . . applies to software providers such as [Salesforce]."

*Does #1 through #90 v. Salesforce.com, Inc.*, No. CGC-19-574770, slip op. at 4 (S.F. Super. Oct. 3, 2019).

That court explained that Salesforce's "customer relationship management . . . software" supplies "enabling tools" that users can access through the internet. *Does #1 through #90*, at 4 (quoting 47 U.S.C. § 230(f)(4)).  Those software tools, the court concluded, put Salesforce well within the "broad statutory definition[]" of an "access software provider," because Salesforce provides "software . . . or enabling tools" that "transmit," "receive," "cache," "search," and "organize" data. *Id.* at 4–5 (quoting 47 U.S.C. § 230(f)(4)).  And because "multiple users" can "access" the "computer server" with those tools, 47 U.S.C. § 230(f)(2), Salesforce is a "provider . . . of an interactive computer service" under section 230(c)(1), *see Does #1 through #90*, at 4.[3]

The court also ruled that the plaintiffs' claims impermissibly "treat[ed] [Salesforce] as the publisher of [third-party] information." *Does #1 through #90*, at 5. The court explained that the plaintiffs' claims relied on third-party content to establish Salesforce's liability.  Simply put, Salesforce could "only be liable if . . . linked to the[] advertisements" that were used to traffic the plaintiffs. *Id.*  Because the plaintiffs alleged that Salesforce was linked to the ads for the reason that "its 'platform and CRM' [software] enabled Backpage to publish and disseminate" them, the court determined that the plaintiffs' claims necessarily implicated Salesforce "as

---

[3]   *See also* Order 2 (noting plaintiffs' allegations that Salesforce's software, among other things, "[c]ollect[ed] information," "[a]nalyz[ed] information," and "utiliz[ed] . . . cloud storage to store . . . information") (quoting TAC ¶ 94)).

a publisher." *Id.* The court therefore concluded that the claims were barred by section 230(c)(1). *Id.* at 5–6.

A Texas state court has held the same—namely, that Salesforce falls within section 230's definition of an interactive computer service and that materially identical claims were barred under section 230. *In Re: Jane Doe Cases, Tex. MDL Cause*, No. 2020-28545, slip op. at 1–2 (Aug. 28, 2020). Thus, whether Salesforce is entitled to section 230 immunity may depend on whether the parties are in state or federal court in Texas—creating a risk of forum shopping between Texas courts that heightens the need for interlocutory review.

Other decisions further highlight the substantial ground for disagreement concerning both (i) whether Salesforce is a "provider . . . of an interactive computer service" as defined by the statute, and (ii) whether section 230(c)(1) immunizes Salesforce against the claims alleged here. Courts have repeatedly held that the text of section 230 covers a variety of different types of interactive computer service providers and bars an array of materially indistinguishable claims.

1.    Relying on the plain statutory text, courts have held that many different types of providers are covered under the statute's capacious definitions of an "interactive computer service" and "access software provider." 47 U.S.C. § 230(f)(2) & (4); *see, e.g.*, *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1175–76 (9th Cir. 2009) (provider of anti-malware software); *Davis v. Motiva Enterprises, L.L.C.*, No. 09-14-00434-CV, 2015 WL 1535694, at *1, *3–4 (Tex. App.—Beaumont Apr. 2, 2015) (employer whose employee used the company's "technology and facilities");

*GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 758–59 (Tex. App.—Beaumont 2014) (website host).

Other courts might therefore conclude (and indeed have concluded) that Salesforce—a provider of software that "enables . . . access by multiple users to a computer server," 47 U.S.C. § 230(f)(2), where those users can use various tools to "transmit," "receive," "cache," "search," and "organize" customer data, *id.* § 230(f)(4)— falls within these definitional provisions, too.

2.      Likewise, the Fifth Circuit and a host of other courts have held that the "plain text" of section 230 immunizes interactive computer service providers from "any cause of action" that treats them as a "publisher" by seeking to hold them "liable for information originating with a third-party user of the service." *Diez*, 831 F. App'x at 724; *accord MySpace*, 528 F.3d at 418 (negligence claims); *see O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 354 (6th Cir. 2016) (invasion of privacy and other tort claims); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 19–20 (1st Cir. 2016) (human trafficking claims); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101–02 (9th Cir. 2009) (collecting citations).

Reasonable jurists could debate whether plaintiffs here seek to hold Salesforce liable in a "case[] arising from the publication of user-generated content." *MySpace*, 528 F.3d at 418.  Some might conclude that Salesforce could be held liable only if it is linked to the sex-trafficking ads posted on the Backpage website.  And some might consider the only link between those ads and Salesforce to be the software that allegedly "provided Backpage with . . . marketing tools . . . that enabled Backpage to

13

reach more and more traffickers." TAC ¶ 10. And thus, some might conclude that plaintiffs' claims implicate Salesforce solely "as the publisher" of the ads posted on the Backpage website—i.e., "information provided by another," 47 U.S.C. § 230(c)(1). Without the third-party ads, there is no connection between plaintiffs and Salesforce.

**B.   Section 1595(a)**

There is also substantial ground for disagreement regarding the proper construction of section 1595(a), as evidenced by decisions in this Circuit and elsewhere. Other district courts in this Circuit have held that "participation in a venture" requires allegations of "direct[] participat[ion] in a specific venture that trafficked Plaintiff on specific occasions at the specific [locations] mentioned in the [complaint]." *E.S. v. Best W. Int'l, Inc.*, No. 3:20-cv-00050-M, 2021 WL 37457, at *4 (N.D. Tex. Jan. 4, 2021); *accord Jane Doe #9 v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016, 2021 WL 1186333, at *1–2 (S.D. Tex. Mar. 30, 2021). That interpretation differs from this Court's view that plaintiffs sufficiently alleged that Salesforce participated in a venture with Backpage simply by alleging that Salesforce did business with Backpage after allegedly learning, or being in a position to learn, about Backpage's involvement in sex trafficking. Order 6.

Courts in other circuits have also interpreted section 1595(a) to demand more than mere allegations of a generic business relationship coupled with conclusory assertions of knowledge. *See, e.g.*, *A.B. v. Wyndham Hotels & Resorts, Inc.*, No. 3:19-cv-01992-IM, 2021 WL 1235241, at *5–7 (D. Ore. Mar. 31, 2021); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214, at *5 (N.D. Cal. July

30, 2020); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020); *Doe 3 v. Red Roof Inns, Inc.*, No. 1:19-cv-03843-WMR, 2020 WL 1872333, at *3 (N.D. Ga. Apr. 13, 2020).

Additionally, the Sixth Circuit has rejected a broad reading of "participation in a venture" in the similar context of 18 U.S.C. § 1591. *United States v. Afyare*, 632 F. App'x 272, 283–85 (6th Cir. 2016). And another district court eschewed a broad reading of section 1595 in a case implicating section 230(e)(5)(A)'s limited exception to section 230 immunity. *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1250–51 (S.D. Fla. 2020).

These decisions confirm that the ground for disagreement is indeed substantial. As this Court has noted, certification is appropriate where a court "reaches a conclusion . . . which is at odds with at least two recent district court opinions." *ACS Primary Care Physicians Sw., P.A. v. UnitedHealthcare Ins.*, No. 4:20-CV-01282, 2021 WL 235177, at *11 (S.D. Tex. Jan. 22, 2021). Here, there are even more.

Not only have district courts divided over the issue, but the courts of appeal have yet to provide guidance. The issue would thus be one of first impression in the Fifth Circuit—and novel, unsettled legal questions like this one are particularly well suited for interlocutory review, *Coates v. Brazoria Cnty. Tex.*, 919 F. Supp. 2d 863, 868–69 (S.D. Tex. 2013), especially where, as here, the viability of a claim turns on them.

### III.     An   immediate   appeal   will   materially   advance   the   ultimate termination of this litigation.

Interlocutory review under section 1292(b) is appropriate where "an immediate appeal from the order may materially advance the ultimate termination of the litigation." The Fifth Circuit has long underscored the importance of this factor in determining that an interlocutory appeal is warranted. *See*, *e.g.*, *In re Ichinose*, 946 F.2d 1169, 1177 (5th Cir. 1991). That is because "[t]he institutional efficiency of the federal court system is among the chief concerns motivating [section] 1292(b)." *Ryan*, 444 F. Supp. 2d at 723 (citation omitted).

"In evaluating this criterion, a district court is to examine whether an immediate appeal would (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Coates*, 919 F. Supp. 2d at 867 (quotation marks and citation omitted). Each goal would be achieved here. An immediate appeal could completely end the litigation, or it could simplify any trial and lessen the burden of discovery by clarifying section 1595(a)'s requirements.

#### A.     Section 230

A ruling in Salesforce's favor on the section 230 immunity issue will undoubtedly "speed up the litigation." *Ryan*, 444 F. Supp. 2d at 723 (citation omitted). In fact, it could end this litigation altogether, as it did in two other courts. Plaintiffs' sole remaining state-law claim would be barred. *See* 47 U.S.C. § 230(e)(3). And their section 1595(a) claim would be foreclosed, as well, because they have not alleged and could not allege that "the conduct underlying the claim constitutes a

16

violation of [18 U.S.C. § 1591]"—as required by section 230(e)(5)(A)'s limited exception to section 230 immunity.   47 U.S.C. § 230(e)(5)(A); *see Esparza Rico v. Flores*, 405 F. Supp. 2d 746, 771 (S.D. Tex. 2005) (noting, in certifying an interlocutory appeal, that "if the Fifth Circuit found that the illegal acts doctrine barred all claims against all defendants, the lawsuit would be over").

### B.    Section 1595(a)

Similarly, a ruling for Salesforce on section 1595(a) would eliminate that issue and thereby reduce the scope, cost, and complexity of this litigation.   If the Fifth Circuit construes section 1595(a) to require more than conclusory allegations of negligence as to or knowledge of wrongdoing plus a generic business relationship, plaintiffs have failed to state a facially valid claim for relief.   Only one issue—whether plaintiffs have alleged a claim under Chapter 98 of the Texas Civil Practices and Remedies Code—would remain.   And even so, a ruling for Salesforce on section 1595(a) would affect the Chapter 98 issue, as this Court deemed plaintiffs' allegations sufficient "[f]or the very same reasons" it found them sufficient under section 1595(a). Order 7.   In sum, "an immediate appeal . . . will prove invaluable to the ultimate resolution of this case."   *See Esparza Rico*, 405 F. Supp. 2d at 771.

### CONCLUSION

For these reasons, Salesforce respectfully requests that this Court certify the Order entered March 23, 2021, for an immediate appeal to the Fifth Circuit under 28 U.S.C. § 1292(b) to address the following questions:

> (1)   Whether section 230 bars plaintiffs' claims for relief because, under the plain text of the statute, (i) Salesforce is a "provider . . . of an

interactive computer service," and (ii) plaintiffs' claims treat Salesforce as a "publisher" by seeking to hold Salesforce "liable for information originating with a third-party user of the service," *Diez v. Google, Inc.*, 831 F. App'x 723, 724 (5th Cir. 2020).

(2)   Whether, where a defendant has entered a business relationship with an entity, conclusory allegations that the defendant knew or was in a position to know about the entity's alleged involvement in sex trafficking are sufficient to state a claim under 18 U.S.C. § 1595(a).

18

DATED:  April 15, 2021

Respectfully submitted,

 /s/ Allyson N. Ho

Kathrine M. Silver
*Of Counsel*
   Texas Bar No. 24013510
   S.D. Tex. Bar No. 25397
William J. Stowe
*Of Counsel*
   Texas Bar No. 24075124
   S.D. Tex. Bar No. 1138801
JACKSON WALKER
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone:  (713) 752-4200
Facsimile:  (713) 308-4141
*ksilver@jw.com*
*wstowe@jw.com*

Allyson N. Ho
*Of Counsel*
   Texas Bar No. 24033667
   S.D. Tex. Bar No. 1024306
Michael Raiff
*Attorney-in-Charge*
   Texas Bar No. 00784803
   S.D. Tex. Bar No. 24328
GIBSON, DUNN & CRUTCHER, LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone:  (214) 698-3100
Facsimile:  (214) 571-2900
*aho@gibsondunn.com*
*mraiff@gibsondunn.com*

Kristin A. Linsley (admitted *pro hac vice*)
*Of Counsel*
GIBSON, DUNN & CRUTCHER, LLP
555 Mission Street
San Francisco, California 94105
Telephone:  (415) 393-8395
Facsimile:  (415) 374-8471
*klinsley@gibsondunn.com*

Katherine L. Montoya
*Of Counsel*
   Texas Bar No. 24110126
   S.D. Tex. Bar No. 3655965
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone:  (202) 955-8500
Facsimile:  (202) 530-9595
*kmontoya@gibsondunn.com*

*Counsel for Defendant salesforce.com, inc.*

19

## CERTIFICATE OF CONFERENCE

I certify that Kristin Linsley, counsel for Salesforce, conferred in good faith with Annie McAdams, counsel for plaintiffs, by email on March 30, 2021 at 5:21 p.m. CDT, who stated by email at 5:51 p.m. CDT the same day that plaintiffs opposed Salesforce's motion for certification of interlocutory appeal of the Court's Order entered March 23, 2021.  These communications are attached as Exhibit A.

*/s/ Allyson N. Ho*
Allyson N. Ho

## CERTIFICATE OF SERVICE

I hereby certify that, on April 15, 2021, a true and correct copy of this motion was served by CM/ECF on all counsel of record.  In addition, (1) the filing is available for viewing and downloading via the CM/ECF system, and (2) the CM/ECF system will send notification of this filing to all attorneys of record who have registered for CM/ECF updates.

*/s/ Allyson N. Ho*
Allyson N. Ho