United States Courts
Southern District of Texas
FILED
January 10, 2025
Nathan Ochsner, Clerk of Court

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
December 19, 2024
Lyle W. Cayce
Clerk

No. 23-20604

A.B.; R.J.; J.F.; P.P.; A.E.; JANE DOE,

*Plaintiffs—Appellees,*

*versus*

SALESFORCE, INCORPORATED,

*Defendant—Appellant.*

Appeals from the United States District Court
for the Southern District of Texas
USDC Nos. 4:20-CV-1254, 4:20-CV-1256,
4:20-CV-1516, 4:21-CV-2856

Before WILLETT and DOUGLAS, *Circuit Judges,* and MORALES, *District Judge.*[*]

DAVID S. MORALES, *District Judge*:

This interlocutory appeal centers around section 230 of the Communications Decency Act. Plaintiffs, a group of sex-trafficking victims, were trafficked through advertisements posted on Backpage.com, an online advertisement forum. They sued Salesforce, a company that provided cloud-

---

[*] United States District Judge for the Southern District of Texas, sitting by designation.

based software tools and related support services to Backpage. Salesforce moved for summary judgment on the grounds that section 230 bars Plaintiffs' claims. Because Plaintiffs' claims do not treat Salesforce as the publisher or speaker of third-party content, Salesforce cannot avail itself of section 230's grant of immunity. Accordingly, we AFFIRM the district court's denial of summary judgment and REMAND for further proceedings consistent with this opinion.

I

Salesforce is a business-software company that provides cloud-based customer-relationship-management ("CRM") technology. Unlike traditional CRM technology, Salesforce's software allows businesses to dispense with rolodexes,[1] physical files, CDs, or local databases and instead organize their customer data on Salesforce's servers. All types of businesses use this software, and Salesforce is the world's largest CRM-software provider.

Backpage was a Craigslist-style online advertisement forum. But it did not just provide a forum for advertising the sale of your couch before a big move—the website also included advertisements for erotic dancers and escort services. In fact, during a 2017 Senate investigation, Backpage did not deny that its site was used for criminal activity, including the sale of children for sex. That investigation eventually found that Backpage knowingly facilitated both prostitution and child sex trafficking, and had concealed evidence of criminal activity on its platform. Ultimately, the Department of Justice seized Backpage, and in 2018, Backpage pled guilty to human trafficking.

---

[1] "Rolodex" is a genericized portmanteau referring to a desktop card index used to record names, addresses, and telephone numbers.

Sometime in 2012 or 2013, Backpage contacted Salesforce about starting a business relationship. Salesforce employees began communicating with Backpage employees and learned about Backpage's process and priorities. The conversations ranged from granular details about the scope of the potential relationship and the services Salesforce would provide to general communications about Backpage's business. As negotiations progressed, the Salesforce executive team was keen on receiving updates about the deal. Ultimately, Salesforce and Backpage entered a contract in late 2013. The business relationship lasted until December 2018.

While Salesforce was providing its CRM software to Backpage, Plaintiffs A.B. and J.F. were trafficked through advertisements posted on Backpage for the Houston geographic area.[2] In or around 2014, A.B. was sold for unlawful sex acts through force, fraud, and coercion. In or around 2018, J.F. was sold for unlawful sex acts by any means.

Plaintiffs sued Salesforce in the Southern District of Texas. Plaintiffs allege that Salesforce violated the Trafficking Victims Protection Act[3] and chapter 98 of the Texas Civil Practice and Remedies Code.[4] The thrust of the complaint is that by supplying its tools, support, and resources to Backpage, Salesforce knowingly facilitated sex trafficking and directly enabled Backpage to function.

Salesforce first moved to dismiss, arguing, *inter alia*, that section 230 shielded it from liability. The district court denied the motion with respect to the section-230 question and allowed limited discovery on that issue.

---

[2] These allegations are taken from a representative complaint that is also referenced by Plaintiffs on appeal.

[3] 18 U.S.C. § 1595.

[4] Five of the six Plaintiffs also alleged conspiracy, negligence, and gross negligence. The district court dismissed those common-law claims, so they are not before the panel.

No. 23-20604

When limited discovery concluded, Salesforce moved for summary judgment on the section-230 issue. The district court denied the motion, holding that section 230 does not shield Salesforce because Plaintiffs' claims do not treat Salesforce as a publisher or speaker of third-party content.

After denying Salesforce's motion for summary judgment, the district court *sua sponte* certified its order for interlocutory appeal. In its certification order, the court identified three controlling questions of law on which there may be substantial grounds for difference of opinion:

1. Is Salesforce a provider of an "interactive computer service" such that it qualifies as an entity entitled to the protection of section 230's immunity provisions?
2. Do Plaintiffs' claims treat Salesforce as a publisher or speaker such that it can invoke the immunity provisions of section 230?
3. If Salesforce is (a) a provider of "interactive computer services," and (b) is treated as a publisher or speaker by Plaintiffs' claims, may Plaintiffs nevertheless proceed with their federal and state law claims under the Fight Online Sex Trafficking Act's exemption to section-230 immunity?

A panel of our court granted leave to file an interlocutory appeal, and we now review the controlling questions of law *de novo*. *Overdam v. Texas A&M Univ.*, 43 F.4th 522, 526 (5th Cir. 2022) (per curiam) (first citing *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996); and then citing *McMillan v. Amazon.com, Inc.*, 983 F.3d 194, 198 (5th Cir. 2020)).

II

Our "jurisdiction is not confined to the precise question[s] certified by the lower court[.]" *Hernandez v. Results Staffing, Inc.*, 907 F.3d 354, 363 (5th Cir. 2018) (quoting *United States v. Stanley*, 483 U.S. 669, 677 (1987)). Because we can resolve this appeal by answering only the second certified

4

question, we do just that. *See Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 348 (2022) (Roberts, C.J., concurring in the judgment) ("If it is not necessary to decide more to dispose of a case, then it is necessary *not* to decide more.").

## III

"Whenever a man publishes, he publishes at his peril."[5]

That axiom no longer rings true in the internet era. In 1996, Congress enacted section 230(c)(1) of the Communications Decency Act: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). With only twenty-six words, Congress fundamentally altered the landscape of liability for publishing content online.

Section 230 provides immunity when the defendant is (1) the provider or user of an interactive computer service and (2) treated as the publisher or speaker of third-party content.[6] *Id.* We address only the second requirement.

Salesforce—standing accused of knowingly benefiting from participation in a sex-trafficking venture in violation of 18 U.S.C. § 1595 and Texas Civil Practice and Remedies Code § 98.002—argues that section 230 cloaks it with immunity because Plaintiffs' claims "necessarily" treat it as the publisher or speaker of advertisements posted on Backpage. We disagree.

The text of section 230, our precedent, and the precedent of our sister circuits uniformly reject the argument Salesforce advances. Instead, the

---

[5] *The King v. Woodfall*, 98 Eng. Rep. 914, 916 (1774).

[6] While courts sometimes break (2) into constitutive parts (i.e., publisher or speaker and third-party content), the parties briefed the issues in line with this phrasing.

No. 23-20604

proper standard is whether the duty the defendant allegedly violated derives from their status as a publisher or speaker or requires the exercise of functions traditionally associated with publication. Under this standard, Plaintiffs' claims do not treat Salesforce as a publisher or speaker of third-party content. Accordingly, Salesforce cannot avail itself of section-230 immunity.

A

"As always, we start with the text." *Campos-Chaves v. Garland*, 144 S. Ct. 1637, 1647 (2024) (citing *Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023)). Section 230 plainly provides that no interactive computer service "shall be treated as the publisher or speaker" of third-party content. 47 U.S.C. § 230(c)(1).

A "careful exegesis of the statutory language" reveals that the central inquiry is whether a claim treats the defendant as a publisher or speaker. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009) (citing *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1171 (9th Cir. 2008) (en banc)). By focusing on the phrase "treated as the publisher or speaker," we maintain fidelity to the statute Congress enacted—extending section-230 immunity no further than the text requires. *Estate of Bride ex rel. Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1175–76 (9th Cir. 2024) (citing *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 853 (9th Cir. 2016)).

Our precedent aligns with this common-sense reading of section 230's text. In *Doe v. MySpace, Inc.*, we adopted a functional, claims-analysis approach to the question of whether a plaintiff's claim treats a defendant as a publisher or speaker of third-party content. 528 F.3d 413 (5th Cir. 2008). There, the plaintiff sued MySpace on a negligence theory of liability, alleging "fail[ure] to implement basic safety measures to prevent sexual predators from communicating with minors on its [web]site." *Id.* at 416. We affirmed

6

the district court's dismissal of the plaintiff's claims on section-230-immunity grounds. *Id.* at 422. Although the plaintiff argued the claims did not seek to treat MySpace as a "publisher," but rather to hold MySpace responsible for its own conduct, we affirmed the district court's conclusion that this was simply "artful pleading." *Id.* at 419–20. Looking at the specific claims the plaintiff advanced, we found—by reference to sister circuit decisions—that the plaintiff sought to hold MySpace "liable for decisions relating to the monitoring, screening, and deletion of content from its network—actions quintessentially related to a publisher's role." *Id.* at 420 (quoting *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003) (internal quotation marks omitted)). This meant that "[t]heir allegations [were] merely another way of claiming that MySpace was liable for publishing the communications and they [spoke] to MySpace's role as a publisher of online third-party-generated content." *Id.* Accordingly, section 230 barred the claims. *Id.*

Although much has changed in the sixteen years since we decided *MySpace*, one thing has remained constant: the text of section 230. To the extent that our cases since *MySpace* have understood the section-230 analysis as focusing on the specific claims and allegations advanced by a plaintiff, those cases have remained faithful to the text of the statute Congress enacted. *See, e.g., Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 284–87 (5th Cir. 2024) (using a claims-analysis approach to distinguish "speaker-liability" from liability under Texas statute regulating the knowing and intentional publication or distribution of sexual material harmful to minors), *cert. granted*, 144 S. Ct. 2714 (2024); *Diez v. Google, Inc.*, 831 F. App'x 723, 724 (5th Cir. 2020) (per curiam) ("[Section] 230 creates federal immunity to *any cause of action* that would make internet service providers liable for [third-party content]." (emphasis added) (internal citations omitted)).

In contrast to our claims-analysis approach, we have rejected a mechanical, but-for reading of section 230. *See Paxton*, 95 F.4th at 286. A but-for test that asks whether third-party speech lies anywhere in the chain of causation leading to the alleged harm would expand section-230 immunity beyond the statute's text. *See Yolo*, 112 F.4th at 1176 n.2 (citing *Internet Brands*, 824 F.3d at 853). Such a test would align more with a statute that read "shall be held liable for conduct involving third-party speech." But that is not the statute Congress enacted. *See* 47 U.S.C. § 230(c)(1).

In *Paxton*, we rejected the plaintiffs' misguided reading of *MySpace* that was akin to a but-for analysis of section 230's publisher-or-speaker question. 95 F.4th at 286. There, the plaintiffs argued that *MySpace* stood for the proposition that "Congress provided broad immunity under the [Communications Decency Act] to Web-based service providers for *all claims* stemming from their publication of information created by third parties." *Id.* (quoting *MySpace*, 528 F.3d at 418) (emphasis added by plaintiffs). We concluded this interpretation—which would impute a but-for test into section 230—missed the point. *See id.* Instead, "[t]he emphasis, properly placed, would read 'Congress provided broad immunity under the [Communications Decency Act] to Web-based service providers for all claims stemming from their *publication of information created by third parties* . . . .'" *Id.* (quoting *MySpace*, 528 F.3d at 418) (emphasis in original). In other words, the emphasis, properly placed, would emphasize whether claims treat a defendant as a publisher or speaker, not whether third-party speech lies somewhere in the chain of causation.

B

Although we have not explicitly recognized as much, the *MySpace* analytical framework mirrors that of other federal courts—both sister circuits and district courts within our circuit.[7]

To determine whether a claim treats a defendant as a publisher or speaker, these courts look to the nature of the claim and the duties the plaintiff seeks to impose on the defendant. "To put it another way, courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" *Barnes*, 570 F.3d at 1102. For example, if the claim seeks to hold the defendant liable for "deciding whether to publish, withdraw, postpone or alter content[,]" the claim treats the defendant as a publisher or speaker and is barred by section 230. *Zeran*, 129 F.3d at 330.

In making this determination, a court can hypothesize what would happen if the allegations were true and the defendant were found liable. *See Force v. Facebook, Inc.*, 934 F.3d 54, 82 (2d Cir. 2019) (Katzmann, C.J., concurring in part and dissenting in part); *Yolo*, 112 F.4th at 1176. A court may "look ... to what the duty at issue actually requires: specifically, whether the duty would necessarily require an internet company to monitor[, alter, or remove] third-party content." *Force*, 934 F.3d at 83 (Katzmann, C.J., concurring in part and dissenting in part) (quoting *HomeAway.com, Inc., v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019)). If it would, then the claim is barred by section 230. *Id.* This thought experiment serves a limited—

---

[7] *E.g., Barnes*, 570 F.3d at 1102; *Zeran*, 129 F.3d at 332–33; *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 19 (1st Cir. 2016); *Fed. Trade Comm'n v. Match Grp., Inc.*, No. 3:19-CV-2281, 2022 WL 877107, at *8–9 (N.D. Tex. Mar. 24, 2022) (Kinkeade, J.); *Doe (S.M.A.) v. Salesforce, Inc.*, No. 3:23-CV-0915, 2024 WL 1337370, at *8 (N.D. Tex. Mar. 28, 2024) (Boyle, J.).

yet critical—purpose: it helps a court detect when a plaintiff has engaged in the kind of artful pleading *MySpace* prohibits. 528 F.3d at 419–20. If courts did not reach a plaintiff's specific factual allegations and the implications of those allegations, we would struggle to detect claims that seek to avoid section 230's grant of immunity by artfully pleading their allegations in terms of negligence or any other duty not traditionally associated with publication. *See id.*

Like we did in *MySpace* and *Paxton*, other federal courts have rejected a mechanical approach to the publisher-or-speaker question. In *MySpace*, we held that a plaintiff cannot artfully plead around section 230 by casting their claims in terms of first-party conduct when they really seek to enforce a duty traditionally associated with publication. 528 F.3d at 420. In other words, it does not matter whether the plaintiff styles the claims in terms of publication. *See id.* It similarly does not matter whether publication is an explicit element of the plaintiff's claim. *Force*, 934 F.3d at 64 n.18. And critically, like we held in *Paxton*, the fact that third-party speech is involved somewhere in the chain of causation that led to a plaintiff's injuries does not mean that a plaintiff's claims necessarily treat a defendant as a publisher or speaker of that third-party speech. *Internet Brands*, 824 F.3d at 853; *Force*, 934 F.3d at 82 (Katzmann, C.J., concurring in part and dissenting in part); *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 567 (7th Cir. 2023).

This last point warrants some emphasis: the text of section 230 "does not mandate a 'but-for test that would provide immunity . . . solely because a cause of action would not otherwise have accrued but for the third-party content.'" *Force*, 934 F.3d at 82 (Katzmann, C.J., concurring in part and dissenting in part) (quoting *HomeAway.com, Inc.*, 918 F.3d at 682); *accord Paxton*, 95 F.4th at 286; *G.G.*, 76 F.4th at 567. In other words, section 230 "does not provide a general immunity against all claims derived from third-party content." *Internet Brands*, 824 F.3d at 853; *see also Calise v. Meta*

*Platforms, Inc.*, 103 F.4th 732, 742 (9th Cir. 2024) ("[I]t is not enough that a claim, including its underlying facts, stems from third-party content for § 230 immunity to apply."). Accordingly, providers of interactive computer services may be held liable for speech or conduct "that is properly attributable to them[,]" even if third-party speech exists somewhere upstream. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (5th Cir. 2009); *see also Anderson v. TikTok, Inc.*, 116 F.4th 180, 184 (3d Cir. 2024).

C

The heart of Salesforce's argument is that section 230 grants Salesforce broad immunity in all cases arising from the publication of third-party content. According to Salesforce, because the only link between Salesforce and Plaintiffs' sex-trafficking-related harms is the illicit ads their traffickers posted on Backpage, Plaintiffs necessarily seek to treat Salesforce as the publisher or speaker of those ads.

Although some daylight may peek through between Salesforce's theory of section 230—let's call it the only-link theory—and a but-for analysis, we close the blinds on its theory for two reasons.

*First*, like the but-for analysis, the only-link theory would expand the grant of immunity beyond section 230's text. *Yolo*, 112 F.4th at 1176 n.2 (citing *Internet Brands*, 824 F.3d at 853). Under this theory, any time third-party content is the only link in the chain of causation, section 230 provides immunity—encompassing vastly more than claims that seek to treat a defendant as a publisher or speaker of third-party content. The propriety of such an extension raises interesting questions. The internet—and the world—have changed in numerous ways since 1996. Indeed, "cloud-based" only recently attained any non-meteorological significance. Whether this warrants an expansion (or contraction) in the scope of section-230 immunity

is not clear. But one thing is clear: any changes are for Congress, not the courts, to effectuate. We are bound to interpret the text of section 230 as enacted by Congress. And that text supports neither a but-for nor an only-link mode of analysis.

*Second*, the only-link theory cannot stand on its own two feet. According to Salesforce, if the only link between a plaintiff's harm and the defendant is third-party content, then section 230 bars the claims. On that logic, if there were some conduct by a defendant in addition to the third-party content, section 230 would not bar the claims. But what if the defendant's conduct fell squarely within section 230's text? For example, publishing defamatory third-party content. To say that in such situations section 230 would not provide immunity "taxes the credulity of the credulous." *Maryland v. King*, 569 U.S. 435, 466 (2013) (Scalia, J., dissenting). But Salesforce's only-link theory, taken to its logical end, would require that anomaly. Avoiding that anomaly requires a focus on the type of conduct involved. In other words, it requires an analysis of whether the duty the defendant allegedly violated derives from their status as a publisher or speaker or requires the exercise of functions traditionally associated with publication. And that puts us right back where we started: the proper standard, derived from the statute Congress enacted.

Because neither the text of section 230 nor our precedent requires such a meandering analytical framework—that in any event leads right back to the proper framework—we decline Salesforce's invitation to go down the rabbit hole.[8]

---

[8] *See generally* Lewis Carroll, *Alice's Adventures in Wonderland* (1865).

No. 23-20604

## IV

We have expounded an analytical framework grounded in section 230's text and this court's precedent, which is also consistent with the precedent of our sister circuits. In line with those authorities, we ask "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" *Yolo*, 112 F.4th at 1177 (quoting *Barnes*, 570 F.3d at 1102). Answering this question "requires a close examination of the duty underlying each cause of action[.]" *Id.* at 1176 (quoting *Barnes*, 570 F.3d at 1107). If the duty "derives from the defendant's status or conduct as a 'publisher or speaker[,]'" then section 230 precludes liability. *Id.* at 1177 (quoting *Barnes*, 570 F.3d at 1102). But if the plaintiff's theories would not require the defendant to exercise some kind of publication or editorial function, then section 230 does not preclude liability. *Id.* Applying that standard here, Plaintiffs' claims do not treat Salesforce as the publisher or speaker of third-party content.

Plaintiffs sued Salesforce asserting claims for knowingly benefiting from participation in a sex-trafficking venture under 18 U.S.C. § 1595 and Texas Civil Practice and Remedies Code § 98.002.[9] Specifically, Plaintiffs allege that Salesforce knowingly assisted, supported, and facilitated sex trafficking by selling its tools and operational support to Backpage even though it knew (or should have known) that Backpage was under investigation for facilitating sex trafficking. In essence, Plaintiffs allege that Salesforce breached a statutory duty to not knowingly benefit from participation in a sex-trafficking venture.

To state the obvious: this duty does not derive from Salesforce's status or conduct as a publisher or speaker and would not require Salesforce

---

[9] *See supra* note 4.

13

No. 23-20604

to exercise publication or editorial functions to avoid liability. *See Yolo*, 112 F.4th at 1176–77. Rather, the duty simply requires that Salesforce not sell its tools and operational support to a company it knew (or should have known) was engaged in sex trafficking. This is not an action "quintessentially related to a publisher's role." *MySpace*, 528 F.3d at 420 (quoting *Green*, 318 F.3d at 471). Accordingly, section 230 does not immunize Salesforce from Plaintiffs' claims.[10]

The same is true with respect to Salesforce's interactions with Backpage data.[11] In this context, Salesforce argues that Plaintiffs' claims would treat Salesforce as a publisher or speaker of data Backpage stored or transmitted using Salesforce's software. Such claims, Salesforce argues, would require Salesforce to police the use of its products and withdraw or restrict access from customers that misuse them by uploading or transmitting allegedly illegal content. This argument misses the mark in two respects.

*First*, the argument does not comport with the plain text of section 230. As the Seventh Circuit aptly explained,

> It does not make sense to treat Salesforce as 'publishing' to Backpage itself content that came from Backpage. With respect to any content that was provided by Backpage, Salesforce fails

---

[10] We disagree with the district court's conclusion that *MySpace* does not apply. Although the district court correctly noted that *Myspace*, and much of our section-230 precedent, deals with platforms rather than equipment or service providers, *see, e.g., Doe ex rel. Roe v. Snap, Inc.*, No. 22-20543, 2023 WL 4174061 (5th Cir. June 26, 2023) (per curiam); *Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016), that is not the lodestar of our section-230 analysis. Rather, as section 230's text requires, we focus on whether the claims treat the defendant as a publisher or speaker of third-party content. The fact that a defendant is a platform only bears on that analysis to the extent it demonstrates that a defendant is being treated as a publisher or speaker of third-party content.

[11] As distinct from Backpage-user data.

14

No. 23-20604

Section 230's 'publisher or speaker' element. To the extent that Salesforce might have 'published' its own data to Backpage's employees, Salesforce fails Section 230's [other] element, which requires that the published content be 'provided by [a third party].'

*G.G.*, 76 F.4th at 568 (citing 47 U.S.C. § 230(c)(1)).

*Second*, the claims do not target actions that are "quintessentially related to a publisher's role." *MySpace*, 528 F.3d at 420 (quoting *Green*, 318 F.3d at 471). While Salesforce argues it would be required to police the use of its products, that is not quintessentially the function of a publisher. *See id.* (quoting *Green*, 318 F.3d at 471) (monitoring, screening, and deletion of content from its network are actions quintessentially related to a publisher's role). Of course, a publisher might also need to police the use of its products. But that is not because of the publisher's unique functions. Rather, it is because a publisher—like Salesforce and every other entity subject to United States federal law—owes a statutory duty to the public not to knowingly benefit from participation in a sex-trafficking venture. *See* 18 U.S.C. § 1595.

To reach this conclusion, we do not accept any of Plaintiffs' factual allegations as true. Although the section-230 publisher-or-speaker analysis often occurs at the motion-to-dismiss stage, the presumption that the allegations are true does not drive the analysis. *Compare G.G.*, 76 F.4th at 548–49, *with id.* at 566–67. Rather, the analysis focuses on the claims and theories of liability advanced by a plaintiff. *See, e.g., MySpace*, 538 F.2d at 420. "[W]hat matters is *whether the cause of action inherently requires* the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1102 (emphasis added). To analyze the inherent nature of Plaintiffs' causes of action, we must necessarily look to

No. 23-20604

their complaint.[12] *See, e.g., Roommates.Com*, 521 F.3d at 1164–65, 1165 n.16 (looking to plaintiffs' complaint in examining the scope of their substantive claims to determine whether section-230 immunity applies at summary judgment). But we do not accept the allegations associated with their claims as true. As section 230 requires, we only consider whether the allegations inherently seek to treat Salesforce as a publisher or speaker of third-party content, not whether—if true—they would treat Salesforce as a publisher or speaker.

To be sure, a plaintiff might use section 1595 or section 98.002 to artfully plead around section-230 immunity. For example, a plaintiff might allege that a defendant knowingly benefitted from a sex-trafficking venture by failing to implement adequate content-moderation policies. Although pled in terms of first-party conduct, this claim would ultimately seek liability "for decisions relating to the monitoring, screening, and deletion of content from its network—actions quintessentially related to a publisher's role." *MySpace*, 528 F.3d at 420 (quoting *Green*, 318 F.3d at 471). In such a case, section-230 immunity would likely attach.

But that is not the case here. Plaintiffs' claims do not seek to hold Salesforce liable for failing to moderate content or any other functions traditionally associated with a publisher's role. *See id.* at 419–20. Rather, Plaintiffs seek to hold Salesforce liable for allegedly providing back-office business services to a company it knew (or should have known) was engaged in sex trafficking. These claims would not inherently require Salesforce, if found liable, to exercise any functions associated with publication.

---

[12] Counsel for Salesforce seems to recognize as much given their representation before the district court that no discovery was necessary for the court to definitively resolve the section-230 issue.

No. 23-20604

Accordingly, Plaintiffs have not engaged in artful pleading, and section 230 does not apply.

The summary judgment evidence confirms this account, demonstrating that Plaintiffs do not seek liability for any publication-related functions. The evidence shows that Salesforce did not have any role in:

- screening, monitoring, or filtering content;

- reviewing or analyzing third-party content;

- transmitting or hosting third-party content;

- editing or altering third-party content;

- developing or enforcing content-moderation policies; or

- deciding how third-party content was organized or displayed.

This evidence also elucidates that Plaintiffs do not artfully plead around section 230 by shrouding an attack on functions associated with publication in terms of section 1595 or section 98.002. Indeed, the summary judgment evidence may even preclude claims predicated on such functions.[13] What remains is Plaintiffs' attempt to hold Salesforce liable for allegedly providing back-office business services to a company it knew (or should have known) was engaged in sex trafficking. Again, that is not conduct traditionally associated with publication, so Plaintiffs' claims are not barred by section 230.

On the topic of summary judgment evidence, one last point: the evidence highlights yet another flaw with Salesforce's only-link theory. Even

---

[13] Plaintiffs agree that Salesforce had "nothing to do" with the trafficking advertisements posted on Backpage.

if we could look past the only-link theory's departure from section 230's text—which we cannot—Salesforce does not prevail when that theory is applied to the summary judgment record at hand. The summary judgment evidence paints a picture that belies Salesforce's forceful argument that the only link between Plaintiffs' harm and Salesforce is third-party content. Indeed, the evidence marshalled by Plaintiffs—including emails between Salesforce and Backpage employees discussing sex-trafficking legislation's impact on their ability to continue to do business—suggests *another* link between Salesforce and Plaintiffs' harms. Namely, Salesforce's provision of back-office business services to Backpage. We do not express any view regarding the merits of the underlying dispute. Rather, we simply note that under Salesforce's proposed interpretation of section 230, at a minimum there could exist a genuine dispute of material fact whether the only link between the harm and Salesforce was third-party content. In other words, Salesforce would not have been entitled to summary judgment even under its own novel theory.

\* \* \*

To sum things up: Plaintiffs' claims do not treat Salesforce as a publisher or speaker of third-party content because they do not (1) derive from Salesforce's status or conduct as a publisher or speaker or (2) impose on Salesforce any duty traditionally associated with publication. As a result, section 230 imposes no barrier, and Plaintiffs' claims against Salesforce may proceed. This conclusion follows from section 230's text and our precedent interpreting same. As an added benefit, this conclusion also aligns with the precedent of our sister circuits.

In deciding the section-230-immunity question, we say nothing about the underlying merits of this dispute. Although section 230 does not immunize Salesforce, that does not necessarily mean that Salesforce is liable.

No. 23-20604

Immunity and liability are distinct. The question of whether Salesforce is liable to Plaintiffs because it knowingly benefitted from participation in a sex-trafficking venture is not before our court and remains to be answered.

## V

Plaintiffs' claims do not treat Salesforce as the publisher or speaker of third-party content, so we AFFIRM the district court's denial of summary judgment and REMAND for further proceedings consistent with this opinion.